## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KALVIN JONES, CHARLESTON POLK, GEORGE PAYTON, AND MICHAEL WALKER** | ) ) ) | **CIVIL ACTION NO**. |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **IV WASTE, L.L.C.** | ) | |
| | ) | |
| *Defendant.* | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**NOW INTO COURT**, Plaintiffs, Kalvin Jones ("Mr. Jones"), Charleston Polk ("Mr. Polk"), George Payton ("Mr. Payton"), and Michael Walker ("Mr. Walker"), (Collectively hereinafter "Plaintiffs") by and through undersigned counsel, hereby submit their Complaint against IV Waste, L.L.C., ("Defendant" or "IV Waste").

## INTRODUCTION

1.

Plaintiffs, by and through their attorney, brings this action against IV Waste for violations of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, violations of 42 U.S.C. § 2000e et seq., and violations of 42 U.S.C. § 1981 et seq. ("Title VII").

1

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under (i) under any Act of Congress providing for the protection of civil rights; (ii) and (iii) Title VII. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.

Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

4.

This court has personal jurisdiction over IV Waste. Defendant IV Waste is a for-profit company doing business in Louisiana. At all times relevant, IV Waste operated its business within the State of Louisiana.

5.

Defendant operates its business within the Eastern District of Louisiana. All actions and inactions by Defendants alleged herein occurred within the Eastern District of Louisiana. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. §1391(b) & (c).

## PARTIES

6. Plaintiff Charleston Polk is an African male residing in Violet, Louisiana. At all relevant times, Plaintiff has been resident of the State of Louisiana and met definition of an

"employee" under all applicable statutes.

7.  Plaintiff George Payton is an is an African male residing in New Orleans, Louisiana. At
    all relevant times, Plaintiff is and has been resident of the State of Louisiana and met
    definition of an "employee" under all applicable statutes.

8.  Plaintiff Kalvin Jones is an is an African male residing in New Orleans, Louisiana. At all
    relevant times, Plaintiff is and has been resident of the State of Louisiana and met
    definition of an "employee" under all applicable statutes.

9.  Plaintiff Michael Walker is an African American male residing in New Orleans,
    Louisiana. At all relevant times, Plaintiff is and has been resident of the State of
    Louisiana and met definition of an "employee" under all applicable statutes.

10.

Upon information and belief, IV Waste is a company engaged in providing commercial
and residential waste solutions throughout Louisiana. At all relevant times, IV Waste has met the
definition of an "employer" under all applicable statutes.

**FACTS**

11.

IV Waste is a privately owned commercial and residential waste company that employees
about 101 individuals across the United States, including Louisiana.

12.

IV Waste operates a branch of its corporation at 730 So Pierce Street, New Orleans, LA
70119.

13.

In support of Mr. Polk's allegations of a hostile work environment based on his race and

3

42 U.S.C. § 1981, Mr. Polk further alleges:

14. Mr. Polk is a member of a protected class, African American.

15. IV Waste failed to provide Mr. Polk with a safe environment because of his race. Mr. Polk faced fear of retaliation by IV Waste if he were to report the harassment, intimidation, and racial discrimination he was suffering from. Had Mr. Polk been Caucasian or Hispanic, IV Waste would have provided Mr. Polk with a safe environment.

16. On or about May 2020, Plaintiff started his employment with IV Waste as a Hopper. As a Hopper, Mr. Polk was responsible for placing trash in their garbage truck. When African Americans were operating a garbage truck, there are two Hoppers assigned to that truck with one Driver.

17. African American workers were subjected to an unreasonable workload compared to Hispanic workers. Hispanic hoppers were permitted to have three (3) hoppers assigned to each garbage truck, while African American hoppers were limited to only two (2) per truck. This unequal allocation of hoppers resulted in African American workers shouldering a heavier workload compared to their Hispanic counterparts, who benefited from having three (3) hoppers per truck.

18. As a Hopper, Mr. Polk was required to work on his designated route until it was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr. Polk had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and Hispanic workers.

19. On or about October 2022, Mr. Polk attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres

announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

20. Mr. Polk and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

21. IV Waste has a third-party contract with Richards Garbage Disposal, which frequently requests assistance from IV Waste to complete its routes. Hispanic employees have been regularly assigned to assist with these routes. In light of the fact that Mr. Polk and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime pay. However, their requests were consistently denied.

22. Mr. Polk and other African American employees overheard IV Waste owner, Sidney Torres, declare that he will be replacing the African American employees with Hispanic employees. Upon this discovery, Plaintiff was assigned to train the Hispanic employees to perform his job duties.

23. On or about October 2022, Plaintiff was terminated.

24. Mr. Polk was subjected to a hostile work environment. Mr. Polk alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact foster a hostile work environment based on his race under 42 U.S.C. § 1981.

25.

In support of Mr. Polk's allegations of racial discrimination under 42 U.S.C. § 1981, Mr.

Polk further alleges:

26. Mr. Polk is a member of a protected class, African American.

27. IV Waste engaged in intentional racial discrimination in violation of the terms and conditions of Mr. Polk's employment. Had Mr. Polk been a Caucasian or Hispanic employee, IV Waste would not have engaged in intentional racial discrimination against Mr. Polk.

28. On or about May 2020, Plaintiff started his employment with IV Waste as a Hopper. As a Hopper, Mr. Polk was responsible for placing trash in their garbage truck. For African Americans there are two Hoppers assigned to a garbage truck with one Driver.

29. African American workers were subjected to an unreasonable workload compared to Hispanic workers. Hispanic hoppers were permitted to have three (3) hoppers assigned to each garbage truck, while African American hoppers were limited to only two (2) per truck. This unequal allocation of hoppers resulted in African American workers shouldering a heavier workload compared to their Hispanic counterparts, who benefited from having three (3) hoppers per truck.

30. As a hopper, Mr. Polk was required to work on his designated route until it was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr. Polk had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and Hispanic workers.

31. On or about October 2022, Mr. Polk attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres announced that IV Waste had secured a ten-year contract with the City of New Orleans.

He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

32. Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

33. IV Waste has a third-party contract with Richards Garbage Disposal, which frequently requests assistance from IV Waste to complete its routes. Hispanic employees have been regularly assigned to assist with these routes. In light of the fact that Mr. Polk and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime pay. However, their requests were consistently denied.

34. African American employees are subjected to strict enforcement of clocking in and out procedures, with missed punch times potentially leading to severe punishments, including termination. In contrast, Hispanic employees are not consistently penalized for similar infractions, highlighting a disparity in treatment and consequences between the two groups.

35. Plaintiff and other African American employees overheard IV Waste owner, Sidney Torres, declared that he will be replacing the African American employees with Hispanic employees. Upon this discovery, Plaintiff was assigned to train the Hispanic employees to perform his job duties.

36. On or about October 2022, Plaintiff was terminated.

37. IV Waste has deliberately manipulated time sheets to fabricate justifications for the

termination of an African American employee. This schedule manipulation has resulted in several African American employees receiving less pay than they are entitled to. When these employees voice concerns about the discrepancies, they are met with retaliatory actions such as termination, suspension, or monetary payments intended to silence complaints and conceal IV Waste's fraudulent conduct.

38. A large majority of IV Waste employees that were African American were terminated and replaced with Hispanic employees.

39. Mr. Polk was subjected to racial discrimination. Mr. Polk alleges that, through discovery based on these allegations, Mr. Polk will prove defendant did in fact engage in intentional racial discrimination in violation of the terms and conditions of his employment under 42 U.S.C. § 1981.

40.

In support of Mr. Polk's allegations of wage discrimination under 42 U.S.C. § 1981, Mr. Polk further alleges:

41. Mr. Polk is a member of a protected class, African American.

42. IV Waste engaged in intentional wage discrimination in violation of the terms and conditions of Mr. Polk's employment. Had Mr. Polk been a Caucasian or Hispanic employee, IV Waste would not have engaged in intentional wage discrimination against Mr. Polk.

43. On or about May 2020, Plaintiff started his employment with IV Waste as a Hopper. As a Hopper, Mr. Polk was responsible for placing trash in their garbage truck.

44. On or about October 2022, Mr. Walker attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres

announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

45. Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

46. IV Waste has a third-party contract with Richards Garbage Disposal, which frequently requests assistance from IV Waste to complete its routes. Hispanic employees have been regularly assigned to assist with these routes. In light of the fact that Mr. Polk and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime pay. However, their requests were consistently denied.

47. When African Americans would question the discrepancy in their pay, they were threatened by IV Waste that they were replaceable. IV Waste Owner, Sidney Torres, specifically reminded African Americans that they can be easily replaced by the Hispanic employees.

48. IV Waste has deliberately manipulated time sheets to fabricate justifications for the termination of an African American employee. This schedule manipulation has resulted in several African American employees receiving less pay than they are entitled to. When these employees voice concerns about the discrepancies, they are met with retaliatory actions such as termination, suspension, or monetary payments intended to silence complaints and conceal IV Waste's fraudulent conduct.

49. Mr. Polk was subjected to wage discrimination. Mr. Polk alleges that, through discovery based on these allegations, Mr. Polk will prove defendant did in fact engage in intentional wage discrimination in violation of the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

50.

In support of Mr. Payton's allegations of a hostile work environment based on his race and ethnicity under 42 U.S.C. § 1981, Mr. Payton further alleges:

51. Mr. Payton is a member of a protected class, African American.

52. IV Waste failed to provide Mr. Payton with a safe environment because of his race. Mr. Payton faced fear of retaliation by IV Waste if he were to report the harassment, intimidation, and racial discrimination he was suffering from. Had Mr. Payton been Caucasian, IV Waste would have provided Mr. Payton with a safe environment.

53. On or about 2006, Plaintiff was hired as a Hopper. As a Hopper, Mr. Payton was responsible for placing trash in their garbage truck. For African Americans there are two Hoppers assigned to a garbage truck with one Driver.

54. African American workers were subjected to an unreasonable workload compared to Hispanic workers. Hispanic Hoppers were permitted to have three (3) Hoppers assigned to each garbage truck, while African American hoppers were limited to only two (2) per truck. This unequal allocation of Hoppers resulted in African American workers shouldering a heavier workload compared to their Hispanic counterparts, who benefited from having three (3) Hoppers per truck.

55. As a Hopper, Mr. Payton was required to work on his designated route until it was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr.

Payton had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and Hispanic workers.

56. Plaintiff was subjected to hate speech by IV Waste Owner, Sidney Torres. As a Hopper, if a garbage truck is not packed out and help is needed in other areas, Hoppers may be required to help. Mr. Payton and his team did go to assist in another area after finishing their original roue and was disciplined by Mr. Torres. Mr. Torres stated, "Nig*a if you don't go and help then you don't have a job."

57. On or about October 2022, Mr. Payton attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

58. Mr. Payton discovered a significant reduction in his wages, which were below the amount he was owed. When he sought to address the issue with Mr. Torres, his request for a discussion was outright denied. Rather than resolving the matter, Mr. Torres responded by suspending Mr. Payton.

59. Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

60. IV Waste has a third-party contract with Richards Garbage Disposal, which frequently requests assistance from IV Waste to complete its routes. Hispanic employees have been

regularly assigned to assist with these routes. In light of the fact that Mr. Payton and other

African American employees were not receiving the compensation as previously

promised, they requested the opportunity to work on Saturdays for overtime pay.

However, their requests were consistently denied.

61. On or about September 2022, Plaintiff was terminated.

62. Mr. Payton alleges that, through discovery based on these allegations, Plaintiff will prove

defendant did in fact foster a hostile work environment based on his race under 42 U.S.C.

§ 1981.

63.

In support of Mr. Payton's allegations of racial discrimination under 42 U.S.C. § 1981,

Mr. Payton further alleges:

64. Mr. Payton is a member of a protected class, African American.

65. IV Waste engaged in intentional racial discrimination in violation of the terms and

conditions of Mr. Payton's employment. Had Mr. Payton been a Caucasian employee, IV

Waste would not have engaged in intentional racial discrimination against Mr. Payton.

66. On or about 2006, Plaintiff was hired as a Hopper. As a Hopper, Mr. Payton was

responsible for placing trash in their garbage truck. For African Americans there are two

Hoppers assigned to a garbage truck with one Driver.

67. African American workers were subjected to an unreasonable workload compared to

Hispanic workers. Hispanic Hoppers were permitted to have three (3) Hoppers assigned

to each garbage truck, while African American hoppers were limited to only two (2) per

truck. This unequal allocation of Hoppers resulted in African American workers

shouldering a heavier workload compared to their Hispanic counterparts, who benefited

from having three (3) Hoppers per truck.

68. As a Hopper, Mr. Payton was required to work on his designated route until it was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr. Payton had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and Hispanic workers.

69. Plaintiff was subjected to hate speech by IV Waste Owner, Sidney Torres. As a Hopper, if a garbage truck is not packed out and help is needed in other areas, Hoppers may be required to help. Mr. Payton and his team did go to assist in another area after finishing their original roue and was disciplined by Mr. Torres. Mr. Torres stated, "Nig*a if you don't go and help then you don't have a job."

70. On or about October 2022, Mr. Payton attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

71. Mr. Payton discovered a significant reduction in his wages, which were below the amount he was owed. When he sought to address the issue with Mr. Torres, his request for a discussion was outright denied. Rather than resolving the matter, Mr. Torres responded by suspending Mr. Payton.

72. Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to

work on Saturdays, while African Americans were strictly limited to weekdays.

73. IV Waste has a third-party contract with Richards Garbage Disposal, which frequently requests assistance from IV Waste to complete its routes. Hispanic employees have been regularly assigned to assist with these routes. In light of the fact that Mr. Payton and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime pay. However, their requests were consistently denied.

74. Mr. Payton was offered a daily rate of $200.00. However, his average daily earnings amounted to $95.00.

75. On or about September 2022, Plaintiff was terminated.

76. IV Waste has deliberately manipulated time sheets to fabricate justifications for the termination of an African American employee. This schedule manipulation has resulted in several African American employees receiving less pay than they are entitled to. When these employees voice concerns about the discrepancies, they are met with retaliatory actions such as termination, suspension, or monetary payments intended to silence complaints and conceal IV Waste's fraudulent conduct.

77. A large majority of IV Waste employees that were African American were terminated and replaced with Hispanic employees.

78. On or about August 2023, Plaintiff attempted to be rehired with IV Waste and was denied. Plaintiff was informed by IV Waste Supervisor that IV Waste was only hiring Hispanic employees.

79. Mr. Payton was subjected to racial discrimination. Mr. Payton alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in

intentional racial discrimination in violation of the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

80.

In support of Mr. Payton's allegations of wage discrimination under 42 U.S.C. § 1981, Mr. Payton further alleges:

81. Mr. Payton is a member of a protected class, African American.

82. IV Waste engaged in intentional wage discrimination in violation the terms and conditions of Mr. Payton's employment. Had Mr. Payton been a Caucasian or Hispanic employee, IV Waste would not have engaged in intentional wage discrimination against Mr. Payton.

83. On or about 2006, Plaintiff was hired as a Hopper. As a Hopper, Mr. Payton was responsible for placing trash in their garbage truck. For African Americans there are two Hoppers assigned to a garbage truck with one Driver.

84. On or about October 2022, Mr. Payton attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

85. Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

86. IV Waste has a third-party contract with Richards Garbage Disposal, which frequently

requests assistance from IV Waste to complete its routes. Hispanic employees have been regularly assigned to assist with these routes. In light of the fact that Mr. Payton and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime pay. However, their requests were consistently denied.

87. Mr. Payton was offered a daily rate of $200.00. However, his average daily earnings amounted to $95.00.

88. When African Americans would question the discrepancy in their pay, they were threatened by IV Waste that they were replaceable. IV Waste Owner, Sidney Torres, specifically reminded African Americans that they can be replaced by the Hispanic employees.

89. IV Waste has deliberately manipulated time sheets to fabricate justifications for the termination of an African American employee. This schedule manipulation has resulted in several African American employees receiving less pay than they are entitled to. When these employees voice concerns about the discrepancies, they are met with retaliatory actions such as termination, suspension, or monetary payments intended to silence complaints and conceal IV Waste's fraudulent conduct.

90. Mr. Payton was subjected to wage discrimination. Mr. Payton alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional wage discrimination in violation of the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

91.

In support of Mr. Jones's allegations of a hostile work environment based on his race and

ethnicity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Mr. Jones further alleges:

92. Mr. Jones is a member of a protected class, African American.

93. IV Waste failed to provide Mr. Jones with a safe environment because of his race. Mr. Jones faced fear of retaliation by IV Waste if he were to report the harassment, intimidation, and racial discrimination he was suffering from. Had Mr. Jones been a Caucasian employee, IV Waste would have provided Mr. Jones with a safe environment.

94. On or about August 1, 2022, Mr. Jones was hired as a Hopper. As a Hopper, Mr. Jones was responsible for placing trash in their garbage truck. For African Americans there are two Hoppers assigned to a garbage truck with one Driver.

95. African American workers were subjected to an unreasonable workload compared to Hispanic workers. Hispanic hoppers were permitted to have three (3) hoppers assigned to each garbage truck, while African American hoppers were limited to only two (2) per truck. This unequal allocation of hoppers resulted in African American workers shouldering a heavier workload compared to their Hispanic counterparts, who benefited from having three (3) hoppers per truck.

96. As a Hopper, Mr. Jones was required to work on his designated route until it was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr. Jones had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and Hispanic workers.

97. On or about October 2022, Mr. Jones attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres

announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

98. Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

99. When African American workers inquired as to why they were not receiving additional pay for Saturdays, many of them, including Mr. Jones, faced retaliation in the form of suspensions or terminations. Supervisor Raymond Williams specifically warned Mr. Walker and Mr. Jones to be cautious about raising complaints to Mr. Torres regarding their wages, indicating that Mr. Torres had, on multiple occasions, threatened to replace African American workers with Hispanic laborers during management meetings.

100.     IV Waste has a third-party contract with Richards Garbage Disposal, which frequently requests assistance from IV Waste to complete its routes. Hispanic employees have been regularly assigned to assist with these routes. In light of the fact that Mr. Jones and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime pay. However, their requests were consistently denied.

101.     On or about December 2022, Mr. Jones was assigned the responsibility of training Hispanic workers in the duties of a Hopper. Despite taking on this additional responsibility, Mr. Jones did not receive any additional compensation for his role as a trainer. After several weeks in this capacity, Mr. Jones observed that African American

employees were being terminated and subsequently replaced by Hispanic employees.

102.      Mr. Jones contacted Supervisor Evans to file a complaint of racial discrimination, expressing his concern that IV Waste was systematically terminating African American employees and replacing them with Hispanic employees. Mr. Jones specifically voiced fears regarding the security of his own employment, believing that his race was the underlying factor threatening his job stability. In response, Supervisor Evans laughed at Mr. Jones's concerns. Furthermore, Supervisor Evans reminded Mr. Jones and other African American employees that they needed to perform their jobs or face being replaced by Hispanic employees.

103.      On or about January 2023, Mr. Jones began encountering difficulties with clocking in for his shifts due to a malfunction in the biometric system used by IV Waste, which was unable to properly read employee fingerprints. When this issue arose, Mr. Jones would clock in manually at the front office. However, there were occasions when the front office was closed in the morning, preventing him from clocking in. In such instances, Mr. Jones would report the issue to Supervisor Evans, who would then enter his clock-in time into the system on his behalf.

104.      On or about February 2023, Mr. Jones arrived to work approximately five (5) minutes late. Prior to his arrival, he informed the assigned Driver that he was running behind schedule. Upon arriving, Mr. Jones clocked in, and his team proceeded to begin their route. Shortly thereafter, Supervisor Evans met with Mr. Jones and his team in the field and relieved Mr. Jones of his duties for the day, replacing him with two Hispanic employees. Supervisor Evans cited Mr. Jones's tardiness as the reason for this action.

105.      Following the incident, Mr. Jones contacted Supervisor Evans to lodge a

complaint of racial discrimination, expressing his belief that it was inappropriate for him to be replaced by Hispanic employees solely for being late on one occasion. Supervisor Evans, however, dismissed Mr. Jones's complaint, attributing the replacement decision solely to Mr. Jones's tardiness.

106.    On or about February 22, 2023, Mr. Jones was unjustly suspended for his efforts to adhere to established company protocols. IV Waste trucks are equipped with a mechanical lifting system designed to automatically lift garbage cans and dispose of trash. According to company policy, drivers are expected to utilize this feature when emptying cans into the truck. However, it is common practice among IV Waste drivers to instruct Hoppers to manually lift the garbage cans, as this method allows for quicker trash disposal and enables the route to be completed in less time.

107.    Mr. Jones was informed that a group of Hispanic employees had abandoned their assigned route for the day. As a result, Mr. Jones and his team were directed to complete both their original route and the additional route left unfinished by these employees. Recognizing the unreasonable workload that would be imposed on him and his team, Mr. Jones declared that will be using the mechanical lifting system. Despite following this reasonable course of action, Mr. Jones was unjustly suspended for wanting to utilize the mechanical system rather than manually lifting the garbage cans. The suspension length was never clarified to Mr. Jones.

108.    Mr. Jones called in every working day to find out if he was able to work for the following day. Mr. Jones was continuously notified that he is not on the schedule due to the suspension. On or about March 3, 2023, Mr. Jones complained to IV Waste Supervisor, Charles Evans, that he had already missed about a weeks' worth of work

from his suspension. Supervisor Evans informed Mr. Jones that he is not on the schedule

for Saturday, March 4, 2023.

109.     On or about March 4, 2023, Mr. Jones was notified by an IV Waste employee that

he is on schedule to work today at 4:00 am, contradicting Supervisor Evans' statement

from the day before. Plaintiff was unable to come into work due to the late notice.

110.     On or about March 7, 2023, Mr. Jones was terminated via telephone by

Supervisor Evans, who alleged that Mr. Jones had accumulated 30 attendance violations.

Mr. Jones, however, disputes these allegations and acknowledges only a single instance

of tardiness. Mr. Jones maintains that the other alleged violations are unfounded and

inaccurate.

111.     IV Waste has deliberately manipulated time sheets to fabricate justifications for

the termination of an African American employee. During the course of Mr. Jones' EEOC

investigation, a timesheet was produced as the purported basis for his termination.

However, the timesheet contains numerous inaccuracies, including recorded tardiness

violations for dates when Mr. Jones was either suspended or had already been terminated.

112.     IV Waste's ability to manipulate employee time sheets has resulted in several

African American employees receiving less pay than they are entitled to. When these

employees voice concerns about the discrepancies, they are met with retaliatory actions

such as termination, suspension, or monetary payments intended to silence complaints

and conceal IV Waste's fraudulent conduct.

113.     Mr. Jones alleges that, through discovery based on these allegations, Plaintiff will

prove defendant did in fact foster a hostile work environment based on his race and

ethnicity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e

et seq., and 42 U.S.C. § 1981.

114.

In support of Mr. Jones's allegations of racial discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Mr. Jones further alleges:

115.    Mr. Jones is a member of a protected class, African American.

116.    IV Waste engaged in intentional racial discrimination in violation of the terms and conditions of Mr. Jones' employment. Had Mr. Jones been a Caucasian or Hispanic employee, IV Waste would not have engaged in intentional racial discrimination against Mr. Jones.

117.    On or about August 1, 2022, Mr. Jones was hired as a Hopper. As a Hopper, Mr. Jones was responsible for placing trash in their garbage truck. For African Americans there are two Hoppers assigned to a garbage truck with one Driver.

118.    African American workers were subjected to an unreasonable workload compared to Hispanic workers. Hispanic Hoppers were permitted to have three (3) Hoppers assigned to each garbage truck, while African American Hoppers were limited to only two (2) per truck. This unequal allocation of Hoppers resulted in African American workers shouldering a heavier workload compared to their Hispanic counterparts, who benefited from having three (3) Hoppers per truck.

119.    As a Hopper, Mr. Jones was required to work on his designated route until it was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr. Jones had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and

Hispanic workers.

120.    On or about October 2022, Mr. Jones attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

121.    Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

122.    When African American workers inquired as to why they were not receiving additional pay for Saturdays, many of them, including Mr. Jones, faced retaliation in the form of suspensions or terminations. Supervisor, Raymond Williams, specifically warned Mr. Walker and Mr. Jones to be cautious about raising complaints to Mr. Torres regarding their wages, indicating that Mr. Torres had, on multiple occasions, threatened to replace African American workers with Hispanic laborers during management meetings.

123.    IV Waste has a third-party contract with Richards Garbage Disposal, which frequently requests assistance from IV Waste to complete its routes. Hispanic employees have been regularly assigned to assist with these routes. In light of the fact that Mr. Jones and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime

pay. However, their requests were consistently denied.

124.     On or about December 2022, Mr. Jones was assigned the responsibility of training

Hispanic workers in the duties of a Hopper. Despite taking on this additional

responsibility, Mr. Jones did not receive any additional compensation for his role as a

trainer. After several weeks in this capacity, Mr. Jones observed that African American

employees were being terminated and subsequently replaced by Hispanic workers.

125.     Mr. Jones contacted Supervisor Evans to file a complaint of racial discrimination,

expressing his concern that IV Waste was systematically terminating African American

employees and replacing them with Hispanic workers. Mr. Jones specifically voiced fears

regarding the security of his own employment, believing that his race was the underlying

factor threatening his job stability. In response, Supervisor Evans laughed at Mr. Jones's

concerns. Furthermore, Supervisor Evans reminded Mr. Jones and other African

American employees that they needed to perform their jobs or face being replaced by

Hispanic workers.

126.     On or about January 2023, Mr. Jones began encountering difficulties with

clocking in for his shifts due to a malfunction in the biometric system used by IV Waste,

which was unable to properly read employee fingerprints. When this issue arose, Mr.

Jones would clock in manually at the front office. However, there were occasions when

the front office was closed in the morning, preventing him from clocking in. In such

instances, Mr. Jones would report the issue to Supervisor Evans, who would then enter

his clock-in time into the system on his behalf.

127.     On or about February 2023, Mr. Jones arrived to work approximately five (5)

minutes late. Prior to his arrival, he informed the assigned Driver that he was running

behind schedule. Upon arriving, Mr. Jones clocked in, and his team proceeded to begin their route. Shortly thereafter, Supervisor Evans met with Mr. Jones and his team in the field and relieved Mr. Jones of his duties for the day, replacing him with two Hispanic workers. Supervisor Evans cited Mr. Jones's tardiness as the reason for this action.

128.     Following the incident, Mr. Jones contacted Supervisor Evans to lodge a complaint of racial discrimination, expressing his belief that it was inappropriate for him to be replaced by Hispanic workers solely for being late on one occasion. Supervisor Evans, however, dismissed Mr. Jones's complaint, attributing the replacement decision solely to Mr. Jones's tardiness.

129.     On or about February 22, 2023, Mr. Jones was unjustly suspended for his efforts to adhere to established company protocols. IV Waste trucks are equipped with a mechanical lifting system designed to automatically lift garbage cans and dispose of trash. According to company policy, drivers are expected to utilize this feature when emptying cans into the truck. However, it is common practice among IV Waste drivers to instruct Hoppers to manually lift the garbage cans, as this method allows for quicker trash disposal and enables the route to be completed in less time.

130.     Mr. Jones was informed that a group of Hispanic employees had abandoned their assigned route for the day. As a result, Mr. Jones and his team were directed to complete both their original route and the additional route left unfinished by these employees. Recognizing the unreasonable workload that would be imposed on him and his team, Mr. Jones declared that will be using the mechanical lifting system. Despite following this reasonable course of action, Mr. Jones was unjustly suspended for wanting to utilize the mechanical system rather than manually lifting the garbage cans. The suspension length

was never clarified to Mr. Jones.

131.     Mr. Jones called in every working day to find out if he was able to work for the following day. Mr. Jones was continuously notified that he is not on the schedule due to the suspension. On or about March 3, 2023, Mr. Jones complained to IV Waste Supervisor Charles Evans that he had already missed about a weeks' worth of work from his suspension. Supervisor Evans informed Mr. Jones that he is not on the schedule for Saturday, March 4, 2023.

132.     On or about March 4, 2023, Mr. Jones was notified by an IV Waste employee that he is on schedule to work today, contradicting Supervisor Evans' statement from the day before. Plaintiff was unable to come into work due to the late notice.

133.     On or about March 7, 2023, Mr. Jones was terminated via telephone by Supervisor Evans, who alleged that Mr. Jones had accumulated 30 attendance violations. Mr. Jones, however, disputes these allegations and acknowledges only a single instance of tardiness, which he admits was a violation of IV Waste's policy. Mr. Jones maintains that the other alleged violations are unfounded and inaccurate.

134.     IV Waste has deliberately manipulated time sheets to fabricate justifications for the termination of an African American employee. During the course of Mr. Jones' EEOC investigation, a timesheet was produced as the purported basis for his termination. However, the timesheet contains numerous inaccuracies, including recorded tardiness violations for dates when Mr. Jones was either suspended or had already been terminated.

135.     IV Waste's ability to manipulate employee time sheets has resulted in several African American employees receiving less pay than they are entitled to. When these employees voice concerns about the discrepancies, they are met with retaliatory actions

such as termination, suspension, or monetary payments intended to silence complaints and conceal IV Waste's fraudulent conduct.

136.    Mr. Jones was subjected to racial discrimination. Mr. Jones alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional racial discrimination in violation of the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

137.

In support of Mr. Jones's allegations of wage discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Mr. Jones further alleges:

138.    Mr. Jones is a member of a protected class, African American.

139.    IV Waste engaged in intentional wage discrimination in violation of the terms and conditions of Mr. Jones' employment. Had Mr. Jones been a Caucasian employee, IV Waste would not have engaged in intentional wage discrimination against Mr. Jones.

140.    On or about August 1, 2022, Mr. Jones was hired as a Hopper. As a Hopper, Mr. Jones was responsible for placing trash in their garbage truck. For African Americans there are two Hoppers assigned to a garbage truck with one Driver.

141.    African American workers were subjected to disparate treatment. Hispanic Hoppers were permitted to have three (3) Hoppers assigned to each garbage truck, while African American Hoppers were limited to only two (2) per truck. This unequal allocation of hoppers resulted in African American workers shouldering a heavier workload compared to their Hispanic counterparts, who benefited from having three (3) Hoppers per truck.

142.    As a Hopper, Mr. Jones was required to work on his designated route until it was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr. Jones had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and Hispanic workers.

143.    On or about October 2022, Mr. Jones attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

144.    Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

145.    When African American workers inquired as to why they were not receiving additional pay for Saturdays, many of them, including Mr. Jones, faced retaliation in the form of suspensions or terminations. Supervisor Raymond Williams specifically warned Mr. Walker and Mr. Jones to be cautious about raising complaints to Mr. Torres regarding their wages, indicating that Mr. Torres had, on multiple occasions, threatened to replace African American workers with Hispanic laborers during management meetings.

146.    IV Waste has a third-party contract with Richards Garbage Disposal, which

frequently requests assistance from IV Waste to complete its routes. Hispanic employees have been regularly assigned to assist with these routes. In light of the fact that Mr. Jones and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime pay. However, their requests were consistently denied.

147.    On or about December 2022, Mr. Jones was assigned the responsibility of training Hispanic workers in the duties of a Hopper. Despite taking on this additional responsibility, Mr. Jones did not receive any additional compensation for his role as a trainer. After several weeks in this capacity, Mr. Jones observed that African American employees were being terminated and subsequently replaced by Hispanic workers.

148.    On or about March 7, 2023, Mr. Jones was terminated via telephone by Supervisor Evans, who alleged that Mr. Jones had accumulated 30 attendance violations. Mr. Jones, however, disputes these allegations and acknowledges only a single instance of tardiness, which he admits was a violation of IV Waste's policy. Mr. Jones maintains that the other alleged violations are unfounded and inaccurate.

149.    IV Waste has deliberately manipulated time sheets to fabricate justifications for the termination of an African American employee. During the course of Mr. Jones' EEOC investigation, a timesheet was produced as the purported basis for his termination. However, the timesheet contains numerous inaccuracies, including recorded tardiness violations for dates when Mr. Jones was either suspended or had already been terminated.

150.    IV Waste's ability to manipulate employee time sheets has resulted in several African American employees receiving less pay than they are entitled to. When these employees voice concerns about the discrepancies, they are met with retaliatory actions

such as termination, suspension, or monetary payments intended to silence complaints and conceal IV Waste's fraudulent conduct.

151.     Mr. Jones was subjected to wage discrimination. Mr. Jones alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional wage discrimination in violation of the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

152.

In support of Mr. Jones's allegations of retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Mr. Jones further alleges:

153.     Mr. Jones is a member of a protected class, African American.

154.     IV Waste engaged in intentional retaliation in violation of the terms and conditions of Mr. Jones' employment. Had Mr. Jones been a Caucasian or Hispanic employee, IV Waste would not have engaged in intentional retaliation against Mr. Jones.

155.     On or about August 1, 2022, Mr. Jones was hired as a Hopper. As a Hopper, Mr. Jones was responsible for placing trash in their garbage truck. For African Americans there are two Hoppers assigned to a garbage truck with one Driver.

156.     African American workers were subjected to an unreasonable workload compared to Hispanic workers. Hispanic Hoppers were permitted to have three (3) Hoppers assigned to each garbage truck, while African American Hoppers were limited to only two (2) per truck. This unequal allocation of Hoppers resulted in African American workers shouldering a heavier workload compared to their Hispanic counterparts, who benefited from having three (3) Hoppers per truck.

157.     As a Hopper, Mr. Jones was required to work on his designated route until it was

completed. However, unlike his Hispanic counterparts, who had more assistance, Mr. Jones had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and Hispanic workers.

158.    On or about October 2022, Mr. Jones attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

159.    Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

160.    When African American workers inquired as to why they were not receiving additional pay for Saturdays, many of them, including Mr. Jones, faced retaliation in the form of suspensions or terminations. Supervisor Raymond Williams specifically warned Mr. Walker and Mr. Jones to be cautious about raising complaints to Mr. Torres regarding their wages, indicating that Mr. Torres had, on multiple occasions, threatened to replace African American workers with Hispanic laborers during management meetings.

161.    IV Waste has a third-party contract with Richards Garbage Disposal, which frequently requests assistance from IV Waste to complete its routes. Hispanic employees

have been regularly assigned to assist with these routes. In light of the fact that Mr. Jones and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime pay. However, their requests were consistently denied.

162.     On or about December 2022, Mr. Jones was assigned the responsibility of training Hispanic workers in the duties of a Hopper. Despite taking on this additional responsibility, Mr. Jones did not receive any additional compensation for his role as a trainer. After several weeks in this capacity, Mr. Jones observed that African American employees were being terminated and subsequently replaced by Hispanic workers.

163.     Mr. Jones contacted Supervisor Evans to file a complaint of racial discrimination, expressing his concern that IV Waste was systematically terminating African American employees and replacing them with Hispanic workers. Mr. Jones specifically voiced fears regarding the security of his own employment, believing that his race was the underlying factor threatening his job stability. In response, Supervisor Evans laughed at Mr. Jones's concerns. Furthermore, Supervisor Evans reminded Mr. Jones and other African American employees that they needed to perform their jobs or face being replaced by Hispanic workers.

164.     On or about December 2022, Mr. Jones was assigned the responsibility of training Hispanic workers in the duties of a Hopper. Despite taking on this additional responsibility, Mr. Jones did not receive any additional compensation for his role as a trainer. After several weeks in this capacity, Mr. Jones observed that African American employees were being terminated and subsequently replaced by Hispanic workers.

165.     Mr. Jones contacted Supervisor Evans to file a complaint of racial discrimination,

expressing his concern that IV Waste was systematically terminating African American employees and replacing them with Hispanic workers. Mr. Jones specifically voiced fears regarding the security of his own employment, believing that his race was the underlying factor threatening his job stability. In response, Supervisor Evans laughed at Mr. Jones's concerns. Furthermore, Supervisor Evans reminded Mr. Jones and other African American employees that they needed to perform their jobs or face being replaced by Hispanic workers.

166.    On or about January 2023, Mr. Jones began encountering difficulties with clocking in for his shifts due to a malfunction in the biometric system used by IV Waste, which was unable to properly read employee fingerprints. When this issue arose, Mr. Jones would clock in manually at the front office. However, there were occasions when the front office was closed in the morning, preventing him from clocking in. In such instances, Mr. Jones would report the issue to Supervisor Evans, who would then enter his clock-in time into the system on his behalf.

167.    On or about February 2023, Mr. Jones arrived to work approximately five (5) minutes late. Prior to his arrival, he informed the assigned Driver that he was running behind schedule. Upon arriving, Mr. Jones clocked in, and his team proceeded to begin their route. Shortly thereafter, Supervisor Evans met with Mr. Jones and his team in the field and relieved Mr. Jones of his duties for the day, replacing him with two Hispanic workers. Supervisor Evans cited Mr. Jones's tardiness as the reason for this action.

168.    Following the incident, Mr. Jones contacted Supervisor Evans to lodge a complaint of racial discrimination, expressing his belief that it was inappropriate for him to be replaced by Hispanic workers solely for being late on one occasion. Supervisor

Evans, however, dismissed Mr. Jones's complaint, attributing the replacement decision solely to Mr. Jones's tardiness.

169.     On or about February 22, 2023, Mr. Jones was unjustly suspended for his efforts to adhere to established company protocols. IV Waste trucks are equipped with a mechanical lifting system designed to automatically lift garbage cans and dispose of trash. According to company policy, drivers are expected to utilize this feature when emptying cans into the truck. However, it is common practice among IV Waste drivers to instruct Hoppers to manually lift the garbage cans, as this method allows for quicker trash disposal and enables the route to be completed in less time.

170.     Mr. Jones was informed that a group of Hispanic employees had abandoned their assigned route for the day. As a result, Mr. Jones and his team were directed to complete both their original route and the additional route left unfinished by these employees. Recognizing the unreasonable workload that would be imposed on him and his team, Mr. Jones declared that will be using the mechanical lifting system. Despite following this reasonable course of action, Mr. Jones was unjustly suspended for wanting to utilize the mechanical system rather than manually lifting the garbage cans. The suspension length was never clarified to Mr. Jones.

171.     Mr. Jones called in every working day to find out if he was able to work for the following day. Mr. Jones was continuously notified that he is not on the schedule due to the suspension. On or about March 3, 2023, Mr. Jones complained to IV Waste Supervisor Charles Evans that he had already missed about a weeks' worth of work from his suspension. Supervisor Evans informed Mr. Jones that he is not on the schedule for Saturday, March 4, 2023.

172.     On or about March 4, 2023, Mr. Jones was notified by an IV Waste employee that he is on schedule to work today, contradicting Supervisor Evans' statement from the day before. Plaintiff was unable to come into work due to the late notice.

173.     On or about March 7, 2023, Mr. Jones was terminated via telephone by Supervisor Evans, who alleged that Mr. Jones had accumulated 30 attendance violations. Mr. Jones, however, disputes these allegations and acknowledges only a single instance of tardiness, which he admits was a violation of IV Waste's policy. Mr. Jones maintains that the other alleged violations are unfounded and inaccurate.

174.     IV Waste has deliberately manipulated time sheets to fabricate justifications for the termination of an African American employee. During the course of Mr. Jones' EEOC investigation, a timesheet was produced as the purported basis for his termination. However, the timesheet contains numerous inaccuracies, including recorded tardiness violations for dates when Mr. Jones was either suspended or had already been terminated.

175.     IV Waste's ability to manipulate employee time sheets has resulted in several African American employees receiving less pay than they are entitled to. When these employees voice concerns about the discrepancies, they are met with retaliatory actions such as termination, suspension, or monetary payments intended to silence complaints and conceal IV Waste's fraudulent conduct.

176.     Mr. Jones was subjected to retaliation. Mr. Jones alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional retaliation in violation of the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

177.

In support of Mr. Walker's allegations of a hostile work environment based on his race and ethnicity under 42 U.S.C. § 1981, Mr. Walker further alleges:

178.     Mr. Walker is a member of a protected class, African American.

179.     IV Waste failed to provide Mr. Walker with a safe environment because of his race. Mr. Walker faced fear of retaliation by IV Waste if he were to report the harassment, intimidation, and racial discrimination he was suffering from. Had Mr. Walker been Caucasian, IV Waste would have provided Mr. Walker with a safe environment.

180.     On or about August 2021, Mr. Walker was hired as a Hopper. As a Hopper, Mr. Walker was responsible for placing trash in their garbage truck. For African Americans there are two Hoppers assigned to a garbage truck with one Driver.

181.     African American workers were subjected to an unreasonable workload compared to Hispanic workers. Hispanic Hoppers were permitted to have three (3) Hoppers assigned to each garbage truck, while African American Hoppers were limited to only two (2) per truck. This unequal allocation of Hoppers resulted in African American workers shouldering a heavier workload compared to their Hispanic counterparts, who benefited from having three (3) Hoppers per truck.

182.     As a Hopper, Mr. Walker was required to work on his designated route until it was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr. Walker had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and Hispanic workers.

183.    On or about October 2022, Mr. Walker attended a meeting with several

employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting,

Mr. Torres announced that IV Waste had secured a ten-year contract with the City of

New Orleans. He further stated that all employees would receive a daily wage of $200,

would not be required to work on Saturdays while still being paid for that day, and that

any overtime would be compensated through 'Chinese overtime' or a fixed salary.

However, these promises were not upheld for the African American employees.

184.    Plaintiff and other African American employees were denied overtime

opportunities, while Hispanic employees were permitted to work overtime. Hispanics

were allowed to work on Saturdays, while African Americans were strictly limited to

weekdays.

185.    When African American workers inquired as to why they were not receiving

additional pay for Saturdays, many of them, including Mr. Walker, faced retaliation in

the form of suspensions or terminations. Supervisor Raymond Williams specifically

warned Mr. Walker and Mr. Kalvin Jones to be cautious about raising complaints to Mr.

Torres regarding their wages, indicating that Mr. Torres had, on multiple occasions,

threatened to replace African American workers with Hispanic laborers during

management meetings.

186.    IV Waste has a third-party contract with Richards Garbage Disposal, which

frequently requests assistance from IV Waste to complete its routes. Hispanic employees

have been regularly assigned to assist with these routes. In light of the fact that Mr.

Walker and other African American employees were not receiving the compensation as

previously promised, they requested the opportunity to work on Saturdays for overtime

pay. However, their requests were consistently denied.

187.    In or around January 2023, Mr. Walker noticed that his paycheck was short by approximately $250.00. After bringing this issue to the attention of his immediate supervisor, Mr. Walker was assured that the discrepancy would be corrected in his next paycheck. However, by February 2023, Mr. Walker's paycheck continued to reflect shortages. He informed his supervisor that he would be unable to return to work until his wages were properly paid. After a brief period of absence, Mr. Walker received the wages he was owed, but was subsequently terminated shortly thereafter, in what appears to be direct retaliation for asserting his rights.

188.    Mr. Walker was subjected to a hostile work environment. Mr. Walker alleges that, through discovery based on these allegations, Mr. Walker will prove defendant did in fact foster a hostile work environment based on his race under 42 U.S.C. § 1981.

189.

In support of Mr. Walker's allegations of racial discrimination under 42 U.S.C. § 1981, Mr. Walker further alleges:

190.    Mr. Walker is a member of a protected class, African American.

191.    IV Waste engaged in intentional racial discrimination in violation of the terms and conditions of Mr. Walker's employment. Had Mr. Walker been a Caucasian or Hispanic employee, IV Waste would not have engaged in intentional racial discrimination against Mr. Walker.

192.    On or about August 2021, Mr. Walker was hired as a Hopper. As a Hopper, Mr. Walker was responsible for placing trash in their garbage truck. For African Americans there are two Hoppers assigned to a garbage truck with one Driver.

193.    African American workers were subjected to disparate treatment. Hispanic Hoppers were permitted to have three (3) Hoppers assigned to each garbage truck, while African American Hoppers were limited to only two (2) per truck. This unequal allocation of hoppers resulted in African American workers shouldering a heavier workload compared to their Hispanic counterparts, who benefited from having three (3) Hoppers per truck.

194.    As a Hopper, Mr. Walker was required to work on his designated route until it was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr. Walker had fewer resources and was forced to work longer hours with less help to complete his daily tasks, highlighting disparate treatment between African American and Hispanic workers.

195.    Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

196.    On or about October 2022, Mr. Walker attended a meeting with several employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

197.    When African American workers inquired as to why they were not receiving additional pay for Saturdays, many of them, including Mr. Walker, faced retaliation in

the form of suspensions or terminations. Supervisor Raymond Williams specifically

warned Mr. Walker and Mr. Kalvin Jones to be cautious about raising complaints to Mr.

Torres regarding their wages, indicating that Mr. Torres had, on multiple occasions,

threatened to replace African American workers with Hispanic laborers during

management meetings.

198.    IV Waste has a third-party contract with Richards Garbage Disposal, which

frequently requests assistance from IV Waste to complete its routes. Hispanic employees

have been regularly assigned to assist with these routes. In light of the fact that Mr.

Walker and other African American employees were not receiving the compensation as

previously promised, they requested the opportunity to work on Saturdays for overtime

pay. However, their requests were consistently denied.

199.    In or around January 2023, Mr. Walker noticed that his paycheck was short by

approximately $250.00. After bringing this issue to the attention of his immediate

supervisor, Mr. Walker was assured that the discrepancy would be corrected in his next

paycheck. However, by February 2023, Mr. Walker's paycheck continued to reflect

shortages. He informed his supervisor that he would be unable to return to work until his

wages were properly paid. After a brief period of absence, Mr. Walker received the

wages he was owed, but was subsequently terminated shortly thereafter, in what appears

to be direct retaliation for asserting his rights.

200.    Mr. Walker was subjected to racial discrimination. Mr. Walker alleges that,

through discovery based on these allegations, Plaintiff will prove defendant did in fact

engage in intentional racial discrimination in violation of the terms and conditions of

Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and

42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

201.

In support of Mr. Walker's allegations of wage discrimination under 42 U.S.C. § 1981,

Mr. Walker further alleges:

202.    Mr. Walker is a member of a protected class, African American.

203.    IV Waste engaged in intentional wage discrimination in violation of the terms and

conditions of Mr. Walker's employment. Had Mr. Walker been a Caucasian employee,

IV Waste would not have engaged in intentional wage discrimination against Mr. Walker.

204.    On or about August 2021, Mr. Walker was hired as a Hopper. As a Hopper, Mr.

Walker was responsible for placing trash in their garbage truck. For African Americans

there are two Hoppers assigned to a garbage truck with one Driver.

205.    African American workers were subjected to disparate treatment. Hispanic

Hoppers were permitted to have three (3) Hoppers assigned to each garbage truck, while

African American Hoppers were limited to only two (2) per truck. This unequal

allocation of hoppers resulted in African American workers shouldering a heavier

workload compared to their Hispanic counterparts, who benefited from having three (3)

Hoppers per truck.

206.    As a Hopper, Mr. Walker was required to work on his designated route until it

was completed. However, unlike his Hispanic counterparts, who had more assistance, Mr.

Walker had fewer resources and was forced to work longer hours with less help to

complete his daily tasks, highlighting disparate treatment between African American and

Hispanic workers.

207.    On or about October 2022, Mr. Walker attended a meeting with several

employees of IV Waste and Sidney Torres, the owner of IV Waste. During this meeting, Mr. Torres announced that IV Waste had secured a ten-year contract with the City of New Orleans. He further stated that all employees would receive a daily wage of $200, would not be required to work on Saturdays while still being paid for that day, and that any overtime would be compensated through 'Chinese overtime' or a fixed salary.

208.    Plaintiff and other African American employees were denied overtime opportunities, while Hispanic employees were permitted to work overtime. Hispanics were allowed to work on Saturdays, while African Americans were strictly limited to weekdays.

209.    When African American workers inquired as to why they were not receiving additional pay for Saturdays, many of them, including Mr. Walker, faced retaliation in the form of suspensions or terminations. Supervisor Raymond Williams specifically warned Mr. Walker and Mr. Kalvin Jones to be cautious about raising complaints to Mr. Torres regarding their wages, indicating that Mr. Torres had, on multiple occasions, threatened to replace African American workers with Hispanic laborers during management meetings.

210.    IV Waste has a third-party contract with Richards Garbage Disposal, which frequently requests assistance from IV Waste to complete its routes. Hispanic employees have been regularly assigned to assist with these routes. In light of the fact that Mr. Walker and other African American employees were not receiving the compensation as previously promised, they requested the opportunity to work on Saturdays for overtime pay. However, their requests were consistently denied.

211.    IV Waste has deliberately manipulated time sheets to alter paychecks to African

American employees. IV Waste's ability to manipulate employee time sheets has resulted in several African American employees receiving less pay than they are entitled to. When these employees voice concerns about the discrepancies, they are met with retaliatory actions such as termination, suspension, or monetary payments intended to silence complaints and conceal IV Waste's fraudulent conduct.

212.    Mr. Walker was subjected to wage discrimination. Mr. Walker alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional wage discrimination in violation of the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

## CAUSES OF ACTION

### AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF
Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981
(Hostile Work Environment)

213.

Plaintiff, Kalvin Jones states a cause of action for racial discrimination because of his protected activities with the Defendant as he is protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiff repeats and re-allege the allegations contained in Paragraph 91, as if fully set forth herein.

214.

Plaintiff Kalvin Jones is a member of a protected class African American.

215.

Defendant has engaged in intentional racial discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting

Plaintiff to intentional discrimination in harassment, hostile work environment, racial discrimination, retaliation, and wage discrimination all in violation of the Civil Rights Act of 1964.

216.

The harassment and discrimination were based on Plaintiff's race.

217.

The harassment was so severe and pervasive that it affected the term, condition and/or privilege of Plaintiff's employment with defendant, thus creating an abusive work environment.

218.

By subjecting Plaintiff to an abusive work environment, Defendant intentionally or recklessly engaged in an extreme and outrageous course of conduct that caused Plaintiff's significant emotional distress.

219.

Plaintiff's requests for relief are set forth below.

**AS FOR THE SECOND CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
42 U.S.C. § 1981
(Hostile Work Environment)**

220.

Plaintiffs, Charleston Polk, George Payton, and Michael Walker state a cause of action for racial discrimination because of their protected activities with the defendant as they are protected under 42 U.S.C. § 1981. Plaintiffs repeats and re-allege the allegations contained in Paragraphs 14, 50, and 177, as if fully set forth herein.

221.

44

Plaintiff Charleston Polk is a member of a protected class African American. Plaintiff George Payton is a member of a protected class African American. Plaintiff Michael Walker is a member of a protected class African American.

222.

Defendant has engaged in intentional racial discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to intentional discrimination in harassment, hostile work environment, racial discrimination, and wage discrimination all in violation of 42 U.S.C. § 1981.

223.

The harassment and discrimination were based on Plaintiffs' race.

224.

The harassment was so severe and pervasive that it affected the term, condition and/or privilege of Plaintiffs' employment with defendant, thus creating an abusive work environment.

225.

By subjecting Plaintiffs to an abusive work environment, Defendant intentionally or recklessly engaged in an extreme and outrageous course of conduct that caused Plaintiffs significant emotional distress.

226.

Plaintiffs' requests for relief are set forth below.

**AS FOR THE THIRD CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981
(Racial Discrimination)**

227.

Plaintiff Kalvin Jones states a cause of action for racial discrimination because of his protected activities with the Defendant as he is protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiff repeats and re-allege the allegations contained in Paragraph 114, as if fully set forth herein.

228.

 Plaintiff Kalvin Jones is a member of a protected class African American.

229.

Defendant has engaged in intentional racial discrimination in violation of the terms and conditions of the Plaintiffs' employment, including, but not limited to, subjecting Plaintiffs to intentional discrimination in Plaintiff's pay, intentional racial discrimination, and termination all in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981.

230.

Defendant's conduct violates Title VII.

231.

By the conduct described above, Defendant intentionally deprived the Plaintiff of the same rights as are enjoyed by other citizens to the creation, performance, enjoyment, and all benefits and privileges, of their employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

46

232.

As a result of defendant's discrimination in violation of Section 1981, the Plaintiff has

been denied employment advancement opportunities providing additional compensation, thereby

entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation,

distress, inconvenience, and loss of enjoyment of life because of defendant's actions, thereby

entitling Plaintiff to compensatory damages.

233.

In its discriminatory actions as alleged above, defendant has acted with malice or

reckless indifference to the rights of the above-named African American Plaintiff, and thereby

entitling him to an award of punitive damages.

234.

Plaintiff's requests for relief are set forth below.

## AS FOR THE FOURTH CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF 42 U.S.C. § 1981 (Racial Discrimination)

235.

Plaintiffs, Charleston Polk, George Payton, and Michael Walker state a cause of action

for racial discrimination because of their protected activities with the defendant as they are

protected under 42 U.S.C. § 1981. Plaintiffs repeats and re-allege the allegations contained in

paragraphs 25, 63, and 189, as if fully set forth herein.

236.

Plaintiff Charleston Polk is a member of a protected class African American. Plaintiff

George Payton is a member of a protected class African American. Plaintiff Michael Walker is a

member of a protected class African American.

47

237.

Defendant has engaged in intentional racial discrimination in violation of the terms and conditions of the Plaintiffs' employment, including, but not limited to, subjecting Plaintiffs to intentional discrimination in Plaintiffs' pay, intentional racial discrimination, and termination all in violation of 42 U.S.C. § 1981.

238.

By the conduct described above, Defendant intentionally deprived the Plaintiffs of the same rights as are enjoyed by other citizens to the creation, performance, enjoyment, and all benefits and privileges, of their employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

239.

As a result of defendant's discrimination in violation of Section 1981, the Plaintiffs have been denied employment advancement opportunities providing additional compensation, thereby entitling them to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of defendant's actions, thereby entitling Plaintiffs to compensatory damages.

240.

In its discriminatory actions as alleged above, defendant has acted with malice or reckless indifference to the rights of the above-named African American Plaintiffs, and thereby entitling them to an award of punitive damages.

241.

Plaintiffs' requests for relief are set forth below.

**AS FOR THE FIFTH CAUSE OF ACTION AGAINST**
**DEFENDANT FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981**
**(Retaliation)**

242.

Plaintiff Kalvin Jones states a cause of action for retaliation because of his protected

activities with the defendant as he is protected under Title VII of the Civil Rights Act of 1964, as

amended and 42 U.S.C. § 2000e *et seq*. Plaintiff repeats and re-alleges the allegations contained

in Paragraph 152, as if fully set forth herein.

243.

Plaintiff Kalvin Jones made a complaint of racial discrimination that IV Waste is

terminating African American workers and subsequently replacing them with Hispanic workers,

and as such engaged in protected activity under Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981.

244.

Defendant has engaged in intentional retaliation in the violation of the terms and

conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to a

hostile work environment, intentional discrimination in Plaintiff's pay, intentional racial

discrimination, and termination all in violation of the Civil Rights Act of 1964.

245.

Defendant's conduct violates Title VII.

246.

As a result of defendants' discrimination in violation of 42 U.S.C. § 2000e et seq., the

Plaintiff has been denied employment advancement opportunities providing additional

compensation, thereby entitling him to injunctive and equitable monetary relief; and has suffered

anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of defendant's actions, thereby entitling him to compensatory damages.

247.

In its discriminatory actions as alleged above, defendant has acted with malice or reckless indifference to the rights of the above-named African American Plaintiff, and thereby entitling him to an award of punitive damages.

248.

Plaintiff's requests for relief are set forth below.

## <u>AS FOR THE SIXTH CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF</u> <u>Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 (Discrimination in Pay)</u>

249.

Plaintiff Kalvin Jones states a cause of action for racial discrimination because of his protected activities with the defendant as he is protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiff repeats and re-alleges the allegations contained in Paragraph 137, as if fully set forth herein.

250.

Plaintiff Kalvin Jones is a member of a protected class African American.

251.

The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981 as Defendant engaged in the practice of discrimination against Plaintiff.

252.

Defendant intentionally discriminated against Plaintiff by subjecting him to discriminatory compensation, in violation of Title VII of the Civil Rights Act of 1964.

253.

Plaintiff's requests for relief are set forth below.

**AS FOR THE SEVENTH CAUSE OF ACTION AGAINST**
**DEFENDANT FOR A VIOLATION OF**
**42 U.S.C. § 1981**
**(Discrimination in Pay)**

254.

Plaintiffs, Charleston Polk, George Payton, and Michael Walker state a cause of action for racial discrimination because of their protected activities against the defendant as they are protected under 42 U.S.C. § 1981. Plaintiffs repeats and re-allege the allegations contained in Paragraphs 40, 80, and 201, as if fully set forth herein.

255.

Plaintiff Charleston Polk is a member of a protected class African American. Plaintiff George Payton is a member of a protected class African American. Plaintiff Michael Walker is a member of a protected class African American

256.

The conduct alleged herein 42 U.S.C. § 1981 as Defendant engaged in the practice of discrimination against Plaintiffs.

257.

Defendant intentionally discriminated against Plaintiffs by subjecting them to discriminatory compensation, in violation of 42 U.S.C. § 1981.

258.

Plaintiffs' requests for relief are set forth below.

51

## ADMINISTRATIVE PROCEDURES

259.

On or about May 3, 2023, the Plaintiff Kalvin Jones filed a timely Charge of Discrimination against IV Waste, LLC alleging discrimination with the Equal Employment Opportunity Commission ("EEOC").  (A true and accurate copy of EEOC Charge of Discrimination # 461-2023-01513, is attached hereto as "Exhibit A").

260.

The Plaintiffs have satisfied all statutory prerequisites for filing this action.

261.

On or about July 5, 2024, the EEOC issued a "Determination and Notice Of Rights" letter for Plaintiff Kalvin Jones' Charge of Discrimination. On or about July 7, 2024, Plaintiff received this letter.  (A true and accurate copy of the EEOC "Determination and Notice of Rights" letter for EEOC Charge of Discrimination # 461-2023-01513, is attached hereto as "Exhibit B").

262.

To remedy the violations of the rights of the Plaintiffs, Plaintiffs requests that the Court award them the relief prayed for below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Charleston Polk, George Payton, Kalvin Jones, and Michael Walker pray for the following relief:

1.

That the practices of Defendant complained of herein be determined and adjudged to be in violation of the rights of Plaintiffs under the Title VII of the Civil Rights Act of 1964, as

amended by the Civil Rights Act of 1991, violations of 42 U.S.C. § 2000e et seq., and violations of 42 U.S.C. § 1981 et seq., and  any other cause(s) of action that can be inferred from the facts set forth herein;

2.

All damages which Plaintiffs have sustained as a result of Defendant's conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits she would have received but for Defendant's unlawful and retaliatory conduct;

3.

An award to Plaintiffs of pre-judgment interest at the highest available rate, from and after the date of service of the initial complaint in this action on all owed wages from the date such wages were earned and due;

4.

An award representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

5.

Awarding Plaintiffs costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

6.

An award to Plaintiffs of compensatory and punitive damages against Defendant, including but not limited to damages for physical injury, emotional distress, humiliation, embarrassment, and anguish;

7.

Post-judgment interest, as provided by law; and

8.

Such other and further legal and equitable relief as may be found appropriate and may be deemed just or equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues do triable in this action.

Respectfully submitted this 2nd day of October 2024.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

*/s/ Christopher A. MInias*
**Christopher A. Minias (#36230)**
**Karl White (#40991)**
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email: chris@miniaslaw.com
Email: karl@miniaslaw.com

## SERVICE INFORMATION

Plaintiffs mailed this day, October 2, 2024, by USPS certified mail Notice of Lawsuit and *Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendant's agent: Alma Torres 101 W Virtue Street, Chalmette, LA 70043.

*/s/ Christopher Minias*
CHRISTOPHER MINIAS